IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CORWIN H.,[1]

                                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

Case No. 6:24-cv-00149-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Corwin H. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is so because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "commits legal error, [courts] uphold the decision where that error is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (simplified); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

**BACKGROUND**

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in September 1987 and was twenty-eight years old on February 1, 2016, his alleged disability onset date.[2] (Tr. 78, 93.) Plaintiff is a high school graduate and completed three years of college. (*Id.* at 42.) In his applications for benefits, Plaintiff alleges disability due to gastroparesis, diabetes, arthrogryposis, depression, anxiety, advanced arthritis, poor vision, and asthma. (Tr. 78-79, 93-94.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on December 20, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 91, 106, 122, 136.) Plaintiff and a vocational expert ("VE") testified at an administrative hearing held on November 4, 2022. (*Id.* at 37-73.) On January 30, 2023, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 17-30.)

On November 24, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[2] "[T]o be eligible for DIB, a claimant must prove continuous disability that began on or before the date last insured[.]" *Hasji v. Kijakazi*, No. 21-15319, 2023 WL 6458648, at *1 (9th Cir. Oct. 4, 2023) (first citing 42 U.S.C. § 423(a)(1)(A), (c)(1); then citing 20 C.F.R. § 404.131; and then citing *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1459 (9th Cir. 1995)); *see also Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (noting that "only disabilities existing before [the] date last insured establish entitlement to [DIB]" (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)). As a result, Plaintiff needed to prove continuous disability that began on before December 31, 2020, his date last insured ("DLI"), to receive DIB. (Tr. 17.)

which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 19-30.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 1, 2016. (*Id.* at 19.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "arthrogryposis multiplex congenita, osteoarthritis of bilateral knees,

type 1 diabetes mellitus, gastroparesis, and asthma[.]" (*Id.* at 20.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 22.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; (2) Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl; (3) Plaintiff can occasionally operate foot controls with the bilateral lower extremities; (4) Plaintiff must avoid concentrated exposure to fumes, odors, gases, and other pulmonary irritants, and to hazards such as operational control of moving machinery or unprotected heights; and (5) Plaintiff requires a single-point cane to ambulate 20 feet or more. (*Id.* at 22-23.) At step four, the ALJ concluded that Plaintiff is able to perform his past relevant work as a customer service representative and personnel clerk. (*Id.* at 28.) Additionally, at step five, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a document preparer and cashier II. (*Id.* at 29.)

## DISCUSSION

In this appeal, Plaintiff argues, *inter alia*, that the ALJ erred by improperly rejecting Plaintiff's subjective symptom testimony and the medical opinion evidence. (Pl.'s Br. at 1-39, ECF No. 13.) As explained below, the Court finds that the ALJ's opinion is based on harmful legal error and not supported by substantial evidence.[3]

///

///

---

[3] Plaintiff raised other arguments which the Court does not reach in light of its remand for the payment of benefits based on the analysis herein.

I.    **SUBJECTIVE SYMPTOM TESTIMONY**

A.    **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

B.    **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 24, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ did not meet that standard here.

1.    **Plaintiff's Daily Activities**

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a

claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination"); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the claimant's symptom testimony and explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony").

In discounting Plaintiff's subjective symptom testimony, the ALJ considered Plaintiff's daily activities in evaluating the intensity, persistence, and limiting effects of his symptoms. (Tr. 24.) The ALJ stated that Plaintiff's ability to be the primary caregiver for his young daughter was inconsistent with his testimony about standing and walking limitations. (*Id.*) The ALJ acknowledged Plaintiff's testimony that he spends his day sitting on the couch watching his daughter and preparing simple meals. (*Id.*) However, the ALJ determined that Plaintiff's ability to care for his daughter is inconsistent with his testimony. (*Id.*)

At the hearing, Plaintiff explained that he spends the majority of his day on the couch with activities set up on the floor for his daughter, and that the most strenuous part of the day is standing up to change his daughter's diaper. (*Id.* at 56-57.) Plaintiff explained that he is unable to take her to the park, and he just sits down with her and oversees activities she does on the floor. (*Id.*) Plaintiff further testified that on his "bad days," his domestic partner sometimes "ends up having to take the day off—and be the caretaker." (*Id.* at 60.) Plaintiff testified that he has "bad days" at least once a week. (*Id.*)

The Court agrees that the ALJ erred by discounting Plaintiff's testimony based on his childcare responsibilities. The ALJ noted that Plaintiff is the primary caregiver for his daughter, but did not point to any evidence in the record that contradicted Plaintiff's testimony about how he cares for his daughter. Further, there is no evidence in the record suggesting that Plaintiff was being dishonest about his childcare responsibilities, and instead the ALJ appears to have assumed without evidence that caring for Plaintiff's daughter would require more strenuous activity than Plaintiff represented.

For these reasons, the Court finds that substantial evidence does not support the ALJ's discounting of Plaintiff's testimony based on his childcare responsibilities. *See Trevizo*, 871 F.3d at 676-82 (noting that there were no "specific details" and "almost no information in the record" about the childcare activities the ALJ cited in discounting symptom testimony and opinion evidence, and noting that the "mere fact" that the claimant engaged in childcare activities did not "constitute an adequately specific conflict with her reported limitations" or "'substantial evidence' inconsistent with [a provider's] informed opinion").

### 2.    Treatment Gap

The ALJ noted that although Plaintiff alleged disability beginning in February 2016, "there is no medical evidence for that period with a gap in treatment from 2015 until 2017 when treated at the Mayo Clinic." (Tr. 24, citing Exhibit 1F-2F, 8F, i.e., Tr. 401-44, 666-79.) Notably, however, the ALJ's decision does not address whether any gap in Plaintiff's treatment history was due to a lack of funds or some other "good reason." *See Joshua R. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-01778-HZ, 2022 WL 1055938, at *4 (D. Or. Apr. 8, 2022) ("Gaps in medical treatment can . . . support an adverse credibility determination as long as the failure to

obtain treatment is not due to the claimant's lack of funds or another 'good reason[ ].'" (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007))).

The record includes reports about Plaintiff's lack of funds and other potentially "good reasons" for the identified gap in his treatment. (*See* Pl.'s Br at 24-25, asserting that he could not afford treatment until 2017 when he was covered by Medicaid; Tr. 57, testifying that he misses a lot of his medical appointments due to nausea or other medical issues, and noting that his "current diabetic doctor is not wanting to schedule [him] for future appointments because [he] missed two appointments this year . . . ."). Thus, the record reflects that at times Plaintiff was unable to seek treatment due to a lack of funds or illness, which the ALJ failed to address.

Further, the record is clear that Plaintiff's treatment records from 2015 were not available because the clinic had since closed its offices. The ALJ acknowledged this issue at the hearing and stated, "there is limited likelihood you're go[ing] to get anything" and "I'm go[ing] to go ahead and treat the record as complete based on that." (Tr. 41.) In any event, Plaintiff's alleged onset date is February 1, 2016, when his symptoms worsened, and therefore any gap in treatment prior to that date does not rise to the level of substantial evidence to discount Plaintiff's testimony.

For these reasons, the Court finds that the ALJ erred in finding that gaps in Plaintiff's treatment history undermined his testimony.

### 3.     Improvement with Treatment

An ALJ may discount a claimant's testimony based on evidence that the claimant's symptoms improved with treatment. *See Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (concluding that the ALJ had provided specific, clear, and convincing reasons for discounting the plaintiff's subjective symptom testimony where

substantial evidence demonstrated that the plaintiff's pain improved with treatment and medication); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted).

Here, however, the ALJ's conclusion that Plaintiff's conditions improved with treatment was not supported by substantial evidence. The ALJ stated that "[t]he treatment has generally been effective in controlling [Plaintiff's] symptoms." (Tr. 24.) However, Plaintiff testified that his gastrointestinal symptoms, including chronic nausea and cycling constipation and diarrhea, had not improved despite many attempts at treatment.[4] (*Id.* at 51-53.)

The record demonstrates that any improvement in Plaintiff's gastrointestinal issues was only temporary. For example, an April 2018 treatment note reflects that Reglan slightly improved Plaintiff's gastrointestinal symptoms. (*Id.* at 491.) However, an October 2018 treatment note reflects that one provider spoke with Plaintiff regarding the side effect of Reglan, and recommended not to use this prescription for longer than three months because of "Reglan side effects, potentially serious such extrapyramidal [symptoms], dystonia, Parkinson, tardive dyskinesia (non-reversible)." (*Id.* at 507-08.) Similarly, another medical provider expressed that she was reluctant to prescribe Reglan on a long-term basis due to the risk of tardive dyskinesia with long term use. (*Id.* at 792.) Further, PA-C Pillion noted that Plaintiff's prognosis was "unknown[,]" and noted concern "for ongoing chronicity as symptoms persist at least [six] years." (*Id.* at 751.)

---

[4] Plaintiff did acknowledge that he was better able to control his diabetes with a new insulin pump, but he explained that he still experienced bouts with uncontrolled blood sugars and chronic nausea. (*Id.* at 53.)

The record reflects that any improvement in Plaintiff's symptoms was only temporary, and therefore the ALJ's discounting of Plaintiff's testimony on the ground of alleged improvement with treatment was not supported by substantial evidence in the record.

### 4.    Objective Medical Evidence

Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting his testimony based on conflicting objective medical evidence.

"[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); *see also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination") (citations omitted); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical impairments was not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)).

Having found that the ALJ erred by discounting Plaintiff's symptom testimony based on his daily activities, gap in treatment, and improvement with treatment, the ALJ may not rely on a lack of objective medical evidence as the only reason to discount his testimony. *See Valdez*, 746 F. App'x at 677 ("[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" (citing *Burch*, 400 F.3d at 680)).

In any event, the ALJ did not explain how Plaintiff's medical records undermined his testimony. (Tr. 24-27.) An ALJ must "specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Brown-Hunter*, 806 F.3d at 489 (noting that the ALJ must "specify which testimony [the ALJ] finds not credible"). This specificity requirement is not satisfied where the ALJ does not connect the medical evidence to any particular symptom testimony. *See id.* at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). Here, the ALJ did not identify the testimony he found not credible and then link that testimony to the record.

Even if the ALJ had satisfied the specificity requirement, the ALJ's reasons for discounting Plaintiff's testimony were not supported by clear and convincing evidence in light of Plaintiff's uncontroverted gastroparesis symptoms. The ALJ discounted Plaintiff's gastrointestinal symptoms largely on the ground that he did not suffer from frequent vomiting and that he was able to gain "significant weight purposely by consuming protein shakes and eating more, demonstrating no worsening in the alleged condition" (*Id.* at 26.) In support, the ALJ cited a June 2020 treatment note reflecting Plaintiff's report that he rarely vomited and that his medications were helping. (*Id.*, citing Exhibit 19F-67, i.e., Tr. 843.) The ALJ also noted that Plaintiff's gastric emptying studies were normal and that his gastroparesis symptoms were "possibly due to elevated blood sugar levels related to the diabetes mellitus impairment." (*Id.*, citing Exhibit 2F-8, 19F-90, 121, i.e., Tr. 431, 866, 897.) The ALJ noted no emergency room visits or hospitalizations resulting from Plaintiff's gastroparesis condition. (*Id.*)

The Court finds that the ALJ's discounting of Plaintiff's gastrointestinal impairments based on the medical evidence was not supported by substantial evidence. The ALJ's reliance on the absence of vomiting is inconsistent with Plaintiff's own testimony that vomiting remained an issue. But in any event, the record is clear that Plaintiff's more significant impairments were near constant nausea and cycling constipation and diarrhea, not vomiting. The Court finds that the ALJ erred by discounting Plaintiff's symptoms of nausea and other gastrointestinal impairments due to the absence of vomiting.

For all of these reasons, the Court finds that the ALJ erred in discounting Plaintiff's subjective symptom testimony.

## II.     MEDICAL OPINION EVIDENCE

### A.     Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[5] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion."[6] *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the

---

[5] The parties agree the revised regulations apply because Plaintiff filed his application after March 27, 2017. (*See* Pl.'s Br. at 29; Def.'s Br. at 9, ECF No. 15.)

[6] In *Cross*, the Ninth Circuit held that the revised regulations are valid under both the Social Security Act and Administrative Procedures Act. 89 F.4th at 1216-17. Recently, "[t]he Supreme Court . . . overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which 'required courts to defer to permissible agency interpretations of the statutes those agencies administer—even when a reviewing court reads the statute differently.'" *Williams v. O'Malley*, No. 23-35358, 2024 WL 3519774, at *1 n.1 (9th Cir. July 24, 2024) (quoting *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2254 (2024)). In *Cross*, the Ninth Circuit "held that the [Social Security] Act 'plainly encompasse[d] the Commissioner's authority to adopt regulations to govern the weighing of medical evidence,' without deferring to the agency's interpretation of the statute." *Id.* (quoting *Cross*, 89 F.4th at 1215). Consequently, the

persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) and 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical

---

Ninth Circuit has found that the Supreme Court's decision in "*Loper* does not undercut *Cross*." *Id.*

opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

**B.    Analysis**

Plaintiff argues that the ALJ's rejection of Dr. Henderson and PA Pillion's medical opinions are not supported by substantial evidence. (Pl.'s Br. at 33.) The Court agrees, but focuses its analysis on PA Pillion's opinion regarding Plaintiff's gastroparesis.

On September 29, 2022, PA Pillion, a gastroenterology specialist, completed a medical assessment form in which she was asked to answer questions concerning Plaintiff's gastroparesis and other health problems. (Tr. 751-52.) PA Pillion indicated that she treated Plaintiff from February 2021 to June 2022. (*Id.* at 751.) She indicated that Plaintiff's conditions were present before she began treating him, noting that Plaintiff was under the care of another provider for "several years prior." (*Id.* at 751-52.) She indicated that Plaintiff had been diagnosed with chronic nausea and vomiting, gastroesophageal reflux disease ("GERD"), and irritable bowel

syndrome with constipation and diarrhea. (*Id.*) With respect to Plaintiff's prognosis, she explained that it is "unknown" but she is "[c]oncern[ed] for ongoing chronicity as symptoms [have] persist[ed] [for] at least [six] years." (*Id.*)

PA Pillion identified the following symptoms Plaintiff exhibits due to his impairments: "recurrent nausea/vomiting, recurrent/persistent diarrhea, persistent/recurrent abdominal pain, cramping and tenderness, poor appetite with weight loss, and emesis." (*Id.*) When asked to identify positive clinical findings and test results, PA Pillion noted that an esophagogastroduodenoscopy ("EGD") was conducted on April 28, 2021, which showed "patchy atrophy duodenum, hypertrophied pylorus, tongues of salmon colored mucosa at [one] junction[,] inflamed junctional mucosa on [another] junction biopsy[,] [and] reactive gastropathy on storm biopsy[.]" (*Id.*)

PA Pillion indicated that Plaintiff would need a job that "permits ready access to a restroom." (*Id.*) She opined that Plaintiff would likely be off task fifteen percent of the workday due to his impairments. (*Id.*) She indicated that Plaintiff would likely be absent from work more than five days per month as a result of his impairments. (*Id.* at 752.) PA Pillion explained that this absenteeism would occur approximately two to three days per week due to debilitating gastrointestinal symptoms including nausea, vomiting, abdominal pain, and diarrhea. (*Id.*) PA Pillion opined that Plaintiff's symptoms would likely cause him to need to take unscheduled restroom breaks four times throughout an eight-hour workday. (*Id.* at 751.) She also opined that Plaintiff would need to take one additional unscheduled break to lie down during an eight-hour workday. (*Id.*) PA Pillion based her opinion on physical examinations, x-rays, progress and office notes, Plaintiff's history and medical file, laboratory reports, and other tests. (*Id.* at 752.)

PA Pillion indicated that Plaintiff's complaints are credible and reasonable in light of his medically diagnosed impairments and the objective medical evidence of record. (*Id.*)

The ALJ's found PA Pillion's opinion "unpersuasive because of a lack of support from objective medical evidence." (*Id.* at 27.) Specifically, the ALJ reasoned that PA Pillion reported only seeing Plaintiff "a couple of times since February 2021" and did not provide any medical evidence to support the opined limitations but "merely cit[ed] [Plaintiff's] subjective complaints." (*Id.*) The ALJ found that PA Pillion's opinions are inconsistent with the treatment record "which reports improvement with [Plaintiff's] gastroparesis impairment, and [Plaintiff's] own testimony of intentional weight gain corroborates such improvement." (*Id.*, citing Exhibit 19F, i.e., Tr. 777-958.) The ALJ further stated that negative gastric emptying studies, unremarkable physical examinations, and Plaintiff's ability to be the primary caregiver of a toddler were also inconsistent with PA Pillion's "opinion of extreme limitations." (*Id.* at 27.)

The Court finds that the ALJ erred in evaluating PA Pillion's opinion. Contrary to the ALJ's assertion, PA Pillion cited objective medical evidence in support of her opinion. (*See, e.g.*, *id.* at 751, noting that the April 2021 EGD showed "patchy atrophy of duodenum, hypertrophied pylorus, tongues of salmon-color mucosa at [one] junction, inflamed junctional mucosa on [another] junction biopsy, and reactive gastropathy on stomach biopsy.") Thus, the ALJ erred in discounting PA Pillion's opinion on the ground that it was based solely on Plaintiff's subjective complaints.

For these reasons, the Court finds that PA Pillion's opinion was supported by objective medical evidence and, for the reasons discussed above, consistent with evidence from both medical and non-medical sources. As a result, the Court finds that the ALJ erred in discounting PA Pillion's medical opinion.

III.    REMEDY

Plaintiff asks the Court to remand for an immediate award of benefits. (Pl.'s Br. at 34-35; Pl.'s Reply at 19-20.) The Commissioner responds that "serious doubt precludes crediting Plaintiff's claims of disabling impairments given that the ALJ identified conflicts between Plaintiff's testimony and the record." (Def.'s Br. at 13.) The Court finds that the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate.

A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is satisfied if: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

B.    Analysis

The Court has concluded that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and PA Pillion's medical opinion. The record has been fully

developed, including treatment notes spanning the relevant time period, opinions from several
medical sources, and Plaintiff's testimony about the severity and effects of his impairments.
Specifically, the ALJ found that Plaintiff's gastroparesis condition is severe, and the record
reflects that it caused Plaintiff to suffer from chronic nausea and cycling constipation/diarrhea
during the relevant time period. Thus, the Court finds that further proceedings would serve no
useful purpose. *See id.* ("Although the Commissioner argues that further proceedings would
serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that
she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true
rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan
qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.")
(citations omitted).

Further, if Plaintiff's symptom testimony and PA Pillion's medical opinion are credited
as true, the record reflects that Plaintiff would miss at least four days of work per month, be off
task fifteen percent of the time, take unscheduled restroom breaks up to four times per day, and
miss up to five days of work per month. (Tr. 27.) The VE testified that being off task more than
fifteen percent of the time, or missing more than two days per month on a recurring basis, would
preclude all work. (*Id.* at 67-68; *see also id.* at 70, testifying that in the VE's professional
opinion, an absence from work includes showing up late, leaving early, and missing part of the
day.) The VE further testified that if an employee must take four bathroom breaks (beyond the
typical duration) per day, "there are no jobs available under that hypothetical." (Tr. 70.) In
addition, the VE testified that if an employee needs unscheduled time to lie down during the day,
"[t]hat is an accommodation and there are no jobs available under that hypothetical." (*Id.*) As a
result of the VE's testimony, the ALJ would be required to find Plaintiff disabled on remand.

*See Garrison*, 759 F.3d at 1021 n.28 (explaining that "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true").

Finally, the Court does not have any serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. Although the Commissioner argues that there is "serious doubt" that Plaintiff is disabled (Def.'s Br. at 13), the Commissioner offers no argument or evidence in support. In fact, neither the ALJ nor the Commissioner have identified any conflicts between Plaintiff's testimony and the record that raise any serious doubt that he is disabled.

For these reasons, the Court does not have serious doubt about whether Plaintiff is disabled and therefore remands this case for the calculation and payment of benefits. *See Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government argues that we should remand for further proceedings rather than remand for an award of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case. . . . We therefore remand to the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [the claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with

instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 25th day of April, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge